**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FB Debt Financing Guarantor, LLC, *et al.*,[1] | Case No. 23-10025 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 32, 82, 267, 361, 368, 371 & 415** |

### ORDER (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH AND (III) GRANTING RELATED RELIEF

This matter coming before the Court on the *Debtors' Motion Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code: (I) For Entry of Interim and Final Orders (A) Approving Sale Timeline, Bidding Procedures and the Form and Manner of Notice Thereof, and (B) Approving the Debtors' Entry Into the Stalking Horse APA; (II) For Entry of a Final Order Approving the Debtors' (A) Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to the Winning Bidder; and (III) Granting Related Relief* [Docket No. 32] (the "Sale Motion"),[2] filed by the debtors (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"); and the Court having previously

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  FB Debt Financing Guarantor, LLC (1271); Forma Brands, LLC (2520); Morphe, LLC (8460); Forma Beauty Brands, LLC (5496); Seemo, LLC (5721); Jaclyn Cosmetics Holdings, LLC (6217); Such Good Everything, LLC (9530); Playa Products, Inc. (3602); and Jaclyn Cosmetics LLC (2690).  The Debtors' service address is 10303 Norris Ave, Pacoima, CA 91331.

[2]  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Sale Motion, the Bidding Procedures Order, or the Stalking Horse APA (as hereinafter defined), as applicable.

entered the *Final Order (A) Approving Certain Bidding Procedures, the Form and Manner of Notice Thereof, and (B) Approving the Debtors' Entry Into the Stalking Horse APA* [Docket No. 267] (the "Bidding Procedures Order"); and FB Acquisition LLC (the "Buyer") having submitted the highest or best bid for the Purchased Assets, as reflected in that certain Stalking Horse APA, dated as of January 12, 2023, by and among the Buyer and the Debtors (as amended or otherwise modified from time to time, the "Stalking Horse APA"), a copy of which is attached hereto as **Exhibit 1**; and the Court having conducted a hearing to consider certain relief requested in the Sale Motion on March 21, 2023 (the "Sale Hearing"), at which time all objecting and interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered: (i) the Sale Motion; (ii) the Stalking Horse APA; (iii) the Bidding Procedures; (iv) the Bidding Procedures Order; (v) the record of the Bidding Procedures Hearing; (vi) the *Declaration of Jay Jacquin, Proposed Investment Banker of the Debtors, in Support of the Debtors' Motion to Obtain Postpetition Debtor-In-Possession Financing and the Debtors' Bidding Procedures Motion* [Docket No. 20]; (vii) all objections filed with the Court, including those at Docket Nos. 175, 363, 374, 376, and 388 (each, an "Objection" and, collectively with any informal objections received by the Debtors, including that received from the Committee, the "Objections"); and (viii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interest of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.    <u>Jurisdiction and Venue</u>.    This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Final Order</u>.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.    <u>Statutory Predicates</u>.    The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

D.    <u>Notice and Opportunity to Be Heard</u>.    As evidenced with the certificates of service filed with the Court [Docket Nos. 198, 203, 333, 334, 379, 397, and 400], the Debtors have provided proper, timely, adequate and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Sale Motion, the Bidding Procedures Order, the Sale Hearing, the sale of the Purchased Assets pursuant to the Stalking Horse APA (the "<u>Sale Transaction</u>") free and clear of any Interests (as defined below) (other than any Permitted Liens

---

[3]    The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.    The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order) within the meaning of section 363(f) of the Bankruptcy Code, the Notice of Cancellation of Auction and Designation of Stalking Horse APA as the Winning Bid [Docket No. 368], the *Notice of Possible Assumption and Assignment with Respect to Executory Contracts and Unexpired Leases of the Debtors Assumption Notice* [Docket No. 361] (the "First Assumption Notice"),and the *Second Notice of Possible Assumption and Assignment with Respect to Executory Contracts and Unexpired Leases of the Debtors* [Docket No. 371] (the "Second Assumption Notice" and, together with the First Assumption Notice and the Final Assumption Notice (as defined below), the "Assumption Notice"), and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to the Buyer at Closing pursuant to this Order and the terms of the Stalking Horse APA (collectively, the "Contracts"), in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9007 and 9014, Local Rules 2002-1, 6004-1 and 9006-1 and the Bidding Procedures Order, to all persons and entities entitled to such notice, including the Sale Notice Parties (as defined in the Bidding Procedures) and all other persons and entities as directed by the Court.  Such notice was good, sufficient and appropriate under the circumstances, including but not limited to providing each counterparty a full and fair opportunity to object to the assumption and assignment of its Contract and its proposed Cure Costs; and no other or further notice of any of the foregoing is required.  With respect to parties in interest whose identities could not be reasonably ascertained by the Debtors, the Sale Notice published in the national edition of *USA Today* on February 15, 2023 [Docket No. 320], was sufficient and reasonably calculated to provide notice to such parties under the circumstances.  The Debtors published the Sale Motion, Bidding Procedures Order, the Bidding Procedures, the Stalking

Horse APA (and all exhibits and schedules thereto), the Sale Notice, the Assumption Notice, and certain other documents relevant to the Sale on the Kroll Website.

E.    <u>Sound Business Purpose</u>.  The Debtors have demonstrated good, sufficient and sound business purposes and justifications for approval of the Sale Motion.  The approval of and entry into the Sale Transaction, the Stalking Horse APA and any ancillary agreements thereto (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors, their estates and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  Business justifications for entry into the Sale Transaction and the Stalking Horse APA include, without limitation, the following: (i) the Stalking Horse APA constitutes the highest or best offer received for the Purchased Assets; (ii) the Stalking Horse APA presents the best opportunity to maximize the value of the Purchased Assets on a going-concern basis and to avoid decline and devaluation as a result of delay or liquidation; (iii) failure to consummate the Sale Transaction expeditiously, as provided under the Stalking Horse APA, could materially diminish creditor recoveries; and (iv) the immediate consummation of the Sale Transaction is necessary to maximize the value of the Debtors' estates.

F.    <u>Compliance with Bidding Procedures</u>.  The Debtors conducted an open and fair Sale Process.  The Sale Process was non-collusive in all respects, and all interested parties were provided a full, fair and reasonable opportunity to make an offer to purchase the Purchased Assets.  The Debtors, the Buyer and their respective counsel and other advisors have complied with the Bidding Procedures and the Bidding Procedures Order.

G.  <u>Highest or Best Value</u>.  The Debtors determined, in their reasonable business judgment, in a manner consistent with their fiduciary duties, that the Buyer's Qualified Bid, as documented in the Stalking Horse APA, was the highest or otherwise best Qualified Bid for the Purchased Assets.  Consummating the Sale Transaction will yield greater value to the Debtors' estates than would have been provided by any other available alternative transaction.

H.  <u>Fair Consideration</u>.  The consideration the Buyer will pay under the Stalking Horse APA constitutes (i) fair and reasonable consideration for the Purchased Assets; and (ii) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States, any state, territory, possession thereof or the District of Columbia.

I.  <u>Free and Clear Sale</u>.  The Debtors may sell the Purchased Assets free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Any holders of Interests that objected to the Sale Transaction or the Sale Motion and that have an Interest in the Purchased Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Interests on the Purchased Assets attach solely to the proceeds of the Sale Transaction ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the

Debtors and their estates.  Any Interest holders that did not object, or that withdrew their objections, to the Sale Motion or the Sale Transaction, are deemed to have consented to the sale of the Purchased Assets free and clear of their respective Interests on the Purchased Assets pursuant to section 363(f)(2) of the Bankruptcy Code; *provided*, *however* that with respect to Space NK Limited, such consent is expressly conditioned on Closing and the Buyer's compliance with Paragraph 25 of this Order.

J.    Buyer's Reliance on Free and Clear Sale.  The Buyer would not have entered into the Stalking Horse APA and would not consummate the Sale Transaction or the other transactions contemplated thereby if the sale of the Purchased Assets were not free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order), or if the Buyer would, or in the future could, be liable for any such Interests.  A sale of the Purchased Assets other than one free and clear of all Interests would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Purchased Assets and the Debtors' estates, with less certainty than provided by the Sale Transaction.  The total consideration to be provided under the Stalking Horse APA reflects the Buyer's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to, and possession of, the Purchased Assets free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order), including, without limitation, any potential derivative, vicarious, transferee or successor liability Interests.

K.    "Interests".  As used in this Order, the term "Interest" includes, in each case to the extent against or with respect to any of the Debtors or in, on, or against or with respect to any of the Purchased Assets:  Liens, claims (as defined in section 101(5) of the Bankruptcy Code), debts

(as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual or tort rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first

offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Purchased Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupation disease, or unemployment or temporary disability claims, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors prior to the Closing; (x) any unexpired and executory or non-executory contract

or unexpired lease to which a Debtor is a party that is not an Assumed Contract; (xi) any other Retained Liabilities under the Stalking Horse APA; and (xii) Interests arising under or in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, Affiliates, or Subsidiaries, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

   L. <u>No Successor or Other Derivative Liability</u>.  By consummating the Sale Transaction pursuant to the Stalking Horse APA, the Buyer is not a mere continuation of any of the Debtors or any Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Buyer and any Debtor.  The Buyer is not holding itself out as a continuation of any Debtor.  The Buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors or any of the Debtors' estates.  Neither the Buyer nor any of its affiliates or their respective successors, assigns, members, partners, principals, officers, directors or direct or indirect shareholders (or the equivalent thereof) (collectively, the "<u>Buyer Related Persons</u>") shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliate of any Debtor) or any Debtor's estate, except as expressly provided in the Stalking Horse APA.  The sale and transfer of the Purchased Assets to the Buyer, including the assumption by the Debtors and assignment, transfer and/or sale to the Buyer of any of the Contracts, will not subject the Buyer and the Buyer Related Persons to any liability with respect to the operation of the Debtors' businesses prior to

the Closing or by reason of such transfer, except that, upon the Closing, the Buyer shall remain liable for the applicable Assumed Liabilities.

M.   <u>Good Faith</u>.   The Debtors, the Buyer and their respective counsel and other advisors have negotiated and entered into the Stalking Horse APA and each of the transactions contemplated thereby in good faith, without collusion and from arm's-length bargaining positions. The Buyer is a good-faith purchaser, and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby. The Debtors were free to deal with any other party interested in acquiring all or some of the Purchased Assets. Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Sale Transaction, the Stalking Horse APA or any of the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) of the Bankruptcy Code. The Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction. The Buyer has not acted in a collusive manner with any person or entity. All payments to be made by the Buyer and all agreements entered into by the Buyer and the Debtors under the Stalking Horse APA in connection with the Sale Transaction have been disclosed and are appropriate. The Stalking Horse APA was not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors under laws of the United States, any state, territory, possession thereof or the District of Columbia, or any other applicable law. Neither the Debtors nor the Buyer have entered into the Stalking Horse APA or are consummating the Sale Transaction with any fraudulent or otherwise improper purpose.

N.     No Collusion.  The Stalking Horse APA was not controlled by an agreement between potential bidders within the meaning of section 363(n) of the Bankruptcy Code. The Debtors and the Buyer have not engaged in any conduct that would cause or permit the Stalking Horse APA or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. Neither the Debtors nor the Buyer has entered into the Stalking Horse APA or is consummating the Sale with any fraudulent or otherwise improper purpose.

O.     Insider Status.  The Buyer is not an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

P.     Assumption and Assignment of Contracts.  The assumption and assignment of the Contracts are an integral part of the Sale Transaction, are in the best interests of the Debtors and their estates and represent the valid and reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Contracts (i) are necessary to sell the Purchased Assets to the Buyer as contemplated by the Stalking Horse APA, (ii) allow the Debtors to sell the Purchased Assets to the Buyer as a going concern, (iii) limit the losses suffered by counterparties to the Contracts and (iv) maximize the recoveries of other creditors of the Debtors by eliminating claims against the Debtors' estates that would arise from the Debtors' rejection of the Contracts.  Any counterparty to any Contract that has not actually filed with the Court and served on the Objection Notice Parties (as defined in the Bidding Procedures) an objection to the Debtors' assumption and assignment of such Contract, or to the applicable Cure Costs, as of the date specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order) is

deemed to have consented to the assumption and assignment of the Contract, and to the applicable Cure Costs.

Q.    <u>Compliance with Section 365 of the Bankruptcy Code</u>.  The Debtors have met all requirements of section 365(b) of the Bankruptcy Code with respect to the assumption and assignment of each of the Contracts.  The Debtors have provided adequate assurance (within the meaning of section 365(b)(1) of the Bankruptcy Code) of cure of any default existing under any of the Contracts on or before the Closing Date.  The Buyer has demonstrated adequate assurance of future performance of and under the Contracts within the meaning of sections 365(b) and 365(f)(2) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in the Contracts or other restrictions prohibiting their assignment or transfer.

R.    <u>Modifications to Contracts</u>.  Pursuant to section 2.1(b) of the Stalking Horse APA, the Buyer may modify the list of the Contracts after the date of this Order.  Such modification rights include, but are not limited to, the right of the Buyer to designate a Contract for assumption by the Debtors and assignment to the Buyer, as well as for exclusion from the Sale as a Retained Contract.  The Buyer would not have agreed to the Sale Transaction without such modification rights.  The notice and opportunity to object provided to counterparties to such Contracts and to other parties in interest, as set forth in the Bidding Procedures Order and in this Order, fairly and reasonably protect any rights that such counterparties and other parties in interest may have with respect to such Contracts.

S.    <u>Property of the Estates</u>.  The Purchased Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

T.    <u>Validity of the Sale Transaction</u>.  The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in all respects in connection with the Sale Transaction.  As of the Closing, the sale and assignment of the Purchased Assets and the Contracts to the Buyer will be a legal, valid and effective transfer of the Purchased Assets and the Contracts, and will vest the Buyer with all right, title and interest of the Debtors in and to the Purchased Assets and the Contracts free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order).  The Debtors have full corporate or other applicable authority to execute the Stalking Horse APA and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors.  Upon entry of this Order, other than any consents identified in the Stalking Horse APA, no consent or approval from any other person, entity or legal authority is required to consummate the Sale Transaction.

U.    As set forth in paragraph F(iii) of the Final DIP Order and subject to the terms therein, the Debtors have stipulated, among other things to the Secured Parties' valid, binding, perfected and enforceable, first priority liens over the Prepetition Collateral (as defined in the Final DIP Order) that secure the Prepetition First Lien Obligations (as defined in the Final DIP Order).  Pursuant to paragraph 44 of the Final DIP Order, such stipulations are binding on all parties in interest.

V.    Pursuant to paragraph 27 of the Final DIP Order, the Court previously ordered that each of Controlling Collateral Agent (subject to paragraph 44 of the Final DIP Order) and

the DIP Agent have the unqualified right to credit bid the full amount of the Prepetition First Lien

Obligations and the DIP Obligations (each as defined in the Final DIP Order), respectively.

        W.    <u>No Sub Rosa Plan</u>.    Neither the Sale Transaction nor the Stalking Horse APA

impermissibly restructures the rights of any of the Debtors' creditors or impermissibly dictates

the terms of a liquidating plan of reorganization of the Debtors.  Neither the Sale Transaction

nor the Stalking Horse APA constitutes a *sub rosa* or *de facto* plan of reorganization or

liquidation.

        X.    <u>No Stay of Order</u>.  Time is of the essence to implement the Stalking Horse APA

and consummate the Sale Transaction.  The Sale Transaction must be approved and

consummated promptly in order to preserve the value of the Purchased Assets and to maximize

the value to the Debtors, their estates, their creditors and all other parties in interest and to ensure

the Debtors' compliance with their obligations under their post-petition financing agreements.

The Debtors have demonstrated compelling circumstances and sound business justifications for

the immediate approval and consummation of the Sale Transaction as contemplated by the

Stalking Horse APA.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d),

7062 or any applicable provisions of the Local Rules, this Order shall not be stayed and shall be

effective and enforceable immediately upon entry.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**

**THAT:**

        1.    <u>Sale Motion Granted</u>.  The Sale Motion and the relief requested therein (to the

extent not previously granted by the Court pursuant to the Bidding Procedures Order or

otherwise) are GRANTED and approved as set forth herein.

2.    <u>Objections Overruled</u>.  Any Objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled and all reservations of rights included in such Objections are hereby OVERRULED on the merits with prejudice or resolved as set forth herein.

3.    <u>Sale Transaction Approved</u>.    The Stalking Horse APA and all transactions contemplated thereby, including the Sale Transaction, are APPROVED.

4.    <u>Prior Findings of Fact and Conclusions of Law</u>.  The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, and the findings of fact recited above are incorporated herein by reference.

5.    <u>Entitled to Credit Bid</u>.  Subject to the resolution of the Committee's objection set forth in paragraph 31 of this Order (which is intended to resolve the Committee's Challenge rights under the Final DIP Order),  Jefferies Finance LLC (in its capacity as Controlling Collateral Agent and DIP Agent), or its assignee or designee, including FB Acquisition LLC, shall be entitled to credit bid all or any portion of each of the DIP Obligations and Prepetition First Lien Obligations without further challenge from any other party in interest, it being found that (i) all of the Prepetition First Lien Obligations and DIP Obligations that constitute the Credit Bid Amount are legal, valid and binding obligations of the Debtors, (ii) the liens securing the Prepetition First Lien Obligations are not subject to any Challenges (as defined in the Final DIP Order) and any such Challenges by any party in interest shall be deemed forever waived, barred and released, and (iii) the Challenge Deadline (as defined in the Final DIP Order) terminated as of the entry of this Order, and no party shall be permitted to assert any Challenge and all such Challenges shall be deemed forever waived, barred and released.  Notwithstanding anything to the contrary herein: (i) other than the Credit Bid Amount, nothing in this Order shall impair,

release, modify, discharge or otherwise affect any of the outstanding Prepetition First Lien Obligations, the DIP Obligations or the adequate protections obligations set forth in the Final DIP Order; and (ii) the occurrence of the Closing Date will constitute the consummation of a sale of all or substantially all of the assets of the Debtors pursuant to Section 363(b) of the Bankruptcy Code.

6.      <u>Debtors' Performance Authorized</u>.  The Debtors are hereby authorized to enter into and perform their obligations under the Stalking Horse APA, and to take such other actions as may be necessary or desirable to effectuate the terms of the Stalking Horse APA, including providing transition services (at the sole expense of Buyer), if needed, and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Stalking Horse APA, the Sale Transaction, or this Order, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and any other instruments of transfer, without further order of the Court.  The Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Buyer or otherwise for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to the Buyer's possession any or all of the Purchased Assets and the Contracts, as may be necessary or appropriate for the Debtors to perform their obligations under the Stalking Horse APA and consummate the Sale Transaction, including, without limitation, providing transition services, without further order of the Court.

7.      The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases and other documents with respect to the Purchased Assets that are necessary or appropriate to effectuate the Stalking Horse APA, the Sale Transaction, or this Order, including, as applicable, amended and restated certificates or articles

of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.

8. <u>Valid Transfer and Assignment</u>. Subject to paragraph 31 of this Order, effective as of the Closing Date, the sale and assignment of the Contracts and the Purchased Assets, including all rights, title and interest of the Debtors and the Debtors' estates in and to the Avoidance Actions and any and all rights to commence and prosecute such actions (collectively with the Avoidance Actions, the "<u>Avoidance Action Assets</u>"), by the Debtors to the Buyer shall constitute a legal, valid and effective transfer and assignment of the Contracts and the Purchased Assets, including the Avoidance Action Assets, notwithstanding any requirement for approval or consent by any person, and will vest the Buyer with all right, title and interest of the Debtors and their respective estates in and to the Contracts and the Purchased Assets, including the Avoidance Action Assets, free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order), pursuant to section 363(f) of the Bankruptcy Code.

9. <u>Free and Clear Sale</u>. Except to the extent specifically provided in the Stalking Horse APA, upon the Closing Date, the Debtors shall be, and hereby are, authorized and empowered, pursuant to sections 105, 363(b), 363(f) and 363(k) of the Bankruptcy Code, to sell and transfer to the Buyer the Purchased Assets. The sale and transfer of the Purchased Assets to the Buyer shall vest the Buyer with all right, title and interest of the Debtor in and to the Purchased Assets free and clear of any and all Interests of any person or entity (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking

Horse APA or this Order), with all such Interests to attach to the net proceeds of the Sale Transaction ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the Debtors or their estates.  Following the Closing, no holder of any Interest on any of the Purchased Assets shall interfere with the Buyer's use or enjoyment of any of the Purchased Assets based on or related to such Interest or any actions that the Debtors have taken or may take in their Chapter 11 Cases and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale Transaction.

10.    The provisions of this Order authorizing the sale and transfer of the Purchased Assets free and clear of Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order) shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate or implement the provisions of this Order.  For the avoidance of doubt, on or after the Closing Date, the Debtors and the Buyer shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents or other instruments in any jurisdiction to record the release, discharge and termination of Interests on the Purchased Assets pursuant to the terms of this Order.

11.    <u>Direction to Creditors</u>.  This Order shall be (a) effective as a determination that, as of the Closing Date, all Interests on the Purchased Assets (except as otherwise expressly assumed under, or expressly permitted by, the Stalking Horse APA) shall be unconditionally released, discharged and terminated as to the Buyer and the Purchased Assets; and (b) binding

upon all persons and entities, including all the Debtors' creditors and any holder of an Interest on any of the Purchased Assets, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Interests on the Purchased Assets, if any.  If any person or entity that has filed a financing statement, mortgage, mechanics lien, *lis pendens* or other document, instrument, notice or agreement evidencing any Interest on the Purchased Assets has not delivered to the Debtors on or before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets, the Debtors and the Buyer are authorized to (x) request that the applicable person or entity execute and file such termination statements, releases, instruments of satisfaction or other documents with respect to the Purchased Assets, and, to the extent such person or entity fails to do so, execute and file such termination statements, releases, instruments of satisfaction or other documents with respect to the Purchased Assets on behalf of the applicable person or entity, and (y) file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests on the Purchased Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office.

12.    <u>Direction to Recording Officers</u>.  All filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, governmental units or departments, secretaries of state, governmental officials and all other persons or entities that may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments regarding the Purchased

Assets or who may be required to report or insure any title or state of title in or to the Purchased Assets, (collectively, the "Recording Officers") are hereby authorized to (a) accept any and all documents or instruments necessary and appropriate to consummate the Sale Transaction or to record and reflect that the Buyer is the owner of the Purchased Assets free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order) and (b) strike all recorded Interests on the Purchased Assets from their records.

13.     Direction to Surrender the Purchased Assets.  All persons or entities in possession or control of any of the Purchased Assets, either presently or on or before the Closing Date, are directed to surrender possession or control of the Purchased Assets to the Buyer on the Closing Date.

14.     No Successor Liability.  The Buyer Related Persons (as hereinafter defined) are not and shall not be (a) deemed a "successor" in any respect to any of the Debtors or any of their estates as a result of the consummation of the Sale Transaction or any other event occurring in the Debtors' Chapter 11 Cases under any theory of law or equity; (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors or any of their estates; (c) deemed to be an alter ego of or have a common identity with any of the Debtors; (d) deemed to have a continuity of enterprise with any of the Debtors; or (e) deemed to be a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, including (with respect to clause (a) through (e) of this paragraph) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, products liability or other law, doctrine rule or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtors' liability under such law, doctrine,

-21-

rule or regulation.

15.     Except as expressly provided in the Stalking Horse APA or this Order with respect to the Assumed Liabilities, the Buyer and the Buyer Related Persons shall not assume, nor be deemed to have assumed or in any way be responsible for any liability or obligation (of any kind, character, or description, whether known or unknown, asserted or unasserted, matured or unmatured, liquidated or unliquidated, disputed or undisputed, accrued or unaccrued, due or to become due, fixed, absolute, contingent or otherwise) of any of the Debtors or any of their estates including, but not limited to, any Retained Liabilities, any bulk sales law, successor or vicarious liability, liability or responsibility for any claim against any of the Debtors or against any related person of the Debtors, or any similar liability or obligation.  The Sale Motion, Sale Notice and Notice of Winning Bidder contain sufficient notice of such limitation in accordance with applicable law.  Except for the Buyer's assumption of the Assumed Liabilities pursuant to the Stalking Horse APA and this Order and claims brought by the Debtors to enforce the express terms of the Stalking Horse APA and this Order, the transfer of the Purchased Assets and the Contracts to the Buyer under the Stalking Horse APA will not result in (a) any Buyer Related Person having any liability or obligation for any claim made against any of the Debtors (or their respective affiliates, together with their respective predecessors, successors, assigns, members, partners, officers, directors, principals or direct or indirect equityholders), including without limitation in respect of the Retained Liabilities, nor in any such liability or obligation attaching to the Purchased Assets; (b) any Buyer Related Person having any liability or obligation with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, recoupment or otherwise, directly or indirectly, any Interests or Retained

Liabilities, nor in any such liability or obligation attaching to the Purchased Assets; or (c) any Buyer Related Person having any liability or obligation to any of the Debtors.

16.     Except with respect to Assumed Liabilities, effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the any Buyer Related Person or their assets (including the Purchased Assets) with respect to any (a) Interest in the Purchased Assets or (b) successor, transferee, vicarious or other similar liability or theory of liability, including (i) commencing or continuing any action or other proceeding pending or threatened, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of the Court or the agreements or actions contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Interest; (iv) asserting any setoff, right of subrogation or recoupment of any kind; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

17.     <u>Sale Proceeds; Payment of Certain Indebtedness</u>.   On the Closing Date, the Debtors shall pay all of the accrued but unpaid reasonable and documented fees and expenses incurred by the DIP Secured Parties or the Secured Parties as provided in the Final DIP Order and subject to (a) the procedures in the Final DIP Order, and (b) the updated Approved Budget attached hereto as **<u>Exhibit 2</u>**.  Nothing in this Order shall limit the rights of the Prepetition Secured Parties or the DIP Secured Parties under the Final DIP Order.

18.  <u>Assumption and Assignment of Contracts</u>.  Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale Transaction, the Debtors' assumption and assignment of the Contracts to the Buyer free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order) pursuant to the terms of the Stalking Horse APA, as modified by the terms of any amendments reached by the Buyer and the respective counterparty, is hereby approved, and the requirements of sections 365(b) and 365(f)(2) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Upon the Debtors' assumption and assignment of the Contracts to the Buyer, each applicable counterparty shall be forever barred, estopped and permanently enjoined from raising or asserting against the Debtors, the Buyer or their respective property, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated senior or subordinate), counterclaim, defense, setoff or any other matter arising under or out of, in connection with or in any way related to, the Contracts existing as of the Closing Date or arising by reason of the Closing.  Upon the Debtors' assumption and assignment of the Contracts to the Buyer, the Buyer shall be fully and irrevocably vested with all right, tile and interest of the Debtors in and to the Contracts and the Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms.  The Debtors' assumption and assignment of the Contracts to the Buyer shall not constitute a default under or a termination of any Contract.

19.     <u>Cure Obligations</u>.  Any defaults or other obligations under the Contracts shall be deemed cured by the Buyer's payment or other satisfaction of the cure amounts, if any, associated with the Contracts (the "<u>Cure Costs</u>").

20.     <u>Cure Objections</u>.  Except as provided herein, all objections to the Debtors' calculation of Cure Costs with respect to any of the Contracts (each such objection, a "<u>Cure Objection</u>") have been overruled, withdrawn, waived, settled or otherwise resolved.  Any Cure Objections as to applicable Cure Costs that have not been resolved by the parties may be heard at a later date as set by the Court.  The pendency of a dispute relating to a particular Contract shall not prevent or delay the assumption or assignment of any other Contract or the closing of the Sale Transaction.

21.     <u>Adequate Assurance</u>.  The Buyer has provided adequate assurance of future performance under the Contracts within the meaning of sections 365(b) and 365(f)(2)(B) of the Bankruptcy Code.  Any Adequate Assurance Objections that have not been withdrawn, waived or settled and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the Debtors' assumption and assignment of the Contracts to the Buyer have been satisfied.

22.     <u>Anti-Assignment Provisions Unenforceable</u>.  No section or provision of any Contract that purports to (a) prohibit, restrict or condition the assignment of a Contract, including, but not limited to, the conditioning of such assignment on the consent of any counterparty to such Contract; (b) authorize the termination, cancellation or modification of a Contract based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or

(d) provide for additional payments, profit sharing, penalties, conditions, renewals, extensions, charges or other financial accommodations in favor of the counterparty to a Contract, or modification of any term or condition upon the assignment of a contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force or effect, and any such section or provision constitutes an unenforceable anti-assignment provision under section 365(f) or 365(l), as applicable, of the Bankruptcy Code or is otherwise unenforceable under section 365(e) of the Bankruptcy Code.

23.    <u>No Fees for Assumption and Assignment</u>.  There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Buyer, its successors or assigns, or the Debtors as a result of the assumption and assignment of the Contracts.

24.    <u>Direction to Contract Counterparties</u>.  All counterparties to Contracts assigned to the Buyer in accordance with the terms of this Order and the Stalking Horse APA shall cooperate with, and expeditiously execute and deliver upon, any reasonable request of the Buyer, and shall not charge the Buyer for any instruments, applications, consents or other documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Debtors' assumption and assignment of the Contracts to the Buyer.

25.    <u>Space NK Limited Charged Assets</u>.  Space NK Limited (as successor-in-interest to Space Brands Limited, "<u>Space NK</u>") has asserted a disputed senior-priority charge in certain intellectual property assets associated with the Lipstick Queen and Frog Prince beauty brands (the "<u>Disputed Space NK Liens</u>"), as identified in the *Limited Objection of Space NK Limited to the Debtors' Post-Petition Financing Motion* [Docket No. 175] (the "<u>Space NK Objection</u>").  In full and final resolution of the Space NK Objection, on the Closing Date, the Buyer shall acquire

the assets subject to the Disputed Space NK Liens for $1,000,000.00, which amount shall be payable in cash via wire transfer to an account designated by Space NK to the Buyer in writing prior to the Closing Date as a lien satisfaction payment (solely with respect to the Disputed Space NK Liens) directly to Space NK by the Buyer or the Debtors (as the Buyer and the Debtors may so arrange in connection with Closing consistent with the Approved Budget, including the Sources and Uses attached thereto as Exhibit A). Subject to receipt by Space NK of that payment, any and all liens or security interests in the assets subject to the Disputed Space NK Liens shall automatically be deemed to be released; *provided*, that upon request made by the Buyer (a) Space NK shall enter into a deed of release in favor of, and in form and substance satisfactory to, the Buyer with respect to the Disputed Space NK Liens; and (b) to the extent that Space NK made filings to perfect the Disputed Space NK Liens at any applicable trademark registries, it shall take whatever reasonable steps and make such filings as may be necessary to release the Disputed Space NK Liens with such registries.

26.     <u>Modification of Contracts List</u>.  The rights of the Buyer to modify the list of Contracts after the date of this Order as set forth in the Stalking Horse APA or herein is approved. By written notice to the Debtors, the Buyer may, in its sole and absolute discretion, amend or revise Schedule 2.1(a)(v) of the Stalking Horse APA ("<u>Schedule 2.1(a)(v)</u>"): (i) two (2) Business Days prior to the Closing Date, in order to add any Contract to such <u>Schedule 2.1(a)(v)</u> and it shall be automatically included as an Assumed Contract for purposes of the Stalking Horse APA (*provided* that Cure Costs for any Contract added to <u>Schedule 2.1(a)(v)</u>, respectively, after the Bid Deadline (as defined in the Bidding Procedures) shall, with the exception of any Omitted Contract, not count towards the Cure Cap); (ii) two (2) Business Days prior to the Closing Date, in order to remove any Contract from such <u>Schedule 2.1(a)(v)</u>, and it shall be automatically

-27-

deemed a Retained Contract for purposes of the Stalking Horse APA; or (iii) at any time after the Closing Date to remove any Contract from such Schedule 2.1(a)(v) in the event that after the Closing Date, (A) the Court determines (or the parties otherwise agree) that the actual Cure Costs exceed the estimated Cure Costs listed on Schedule 2.1(a)(v), or (B) a timely filed objection to a Cure Cost or to Buyer's assumption and assignment of a Contract is not resolved, and, in each case of the preceding clauses (A) or (B), such removed Contract shall be automatically deemed a Retained Contract for purposes of the Stalking Horse APA; *provided*, that Buyer has notified the Debtors in writing of the removal of any such Contract no later than thirty (30) days following the determination of the actual Cure Cost of such Contract.

27.     Within two (2) business days of the Closing, the Debtors shall file a notice of the Closing, attaching the list of the Contracts assumed and assigned to the Buyer effective as of the Closing Date (the "Final Assumption Notice").

28.     If it is discovered that a Contract should have been listed on Schedule 2.1(a)(v) but was omitted therefrom (an "Omitted Contract"), the Debtors shall, promptly following discovery thereof (but in no event later than three (3) Business Days after such discovery), (x) notify Buyer in writing of such Omitted Contract and the corresponding estimated Cure Costs related thereto (if any) and (y) if requested by the Buyer in writing (email to suffice), either file a supplemental contract assumption notice as set forth in the Bidding Procedures Order or file a motion with the Court on notice to the counterparties to such Omitted Contract seeking entry of an Order fixing the Cure Costs and approving the assumption and assignment of such Omitted Contract in accordance with Section 2.1 of the Stalking Horse APA (provided that no Omitted Contract shall be assumed by and assigned to Buyer unless such Omitted Contract shall be accepted at such time in writing (email to suffice) by Buyer as an Assumed

Contract).  With respect to each Assumed Contract, Buyer shall provide adequate assurance of the future performance of such Assumed Contract to the applicable counterparty to such Assumed Contract.

29.    <u>Licenses and Permits</u>.  To the extent provided in the Stalking Horse APA and available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Purchased Assets and the Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.  To the extent any license or permit necessary for the operation of the Purchased Assets is determined not to be an executory contract that may be assumed and assigned under section 365 of the Bankruptcy Code, the Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of the Debtors shall remain in place for the Buyer's benefit until a new license or permit is obtained (or, in the case of licenses or permits of Debtors of which the assignment to Buyer is pending as of the Closing Date (whether pursuant to a notice period that has not expired as of the Closing Date or a required consent from an applicable governmental authority that has not been received as of the Closing Date), shall transfer to Buyer upon the expiration of such notice period or the receipt of such consent).

30.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction.

31.   <u>Resolution of Committee's Objection</u>.   The following provisions resolve the Committee's informal objections to the Sale Motion and establish a framework for the consensual wind down of the Debtors' estates:

    a.   <u>Updated DIP Budget</u>.  The Debtors, Lenders and Committee have agreed to the updated Approved Budget attached hereto as **<u>Exhibit 2</u>** that provides for the Debtors to draw $21.1 million prior to the Closing Date to (i) satisfy certain outstanding administrative and priority claims, including various claims of employees; and (ii) fund the Wind Down Funds to allow the Debtors to make distributions to creditors and wind down the Debtors' estates.

    b.   <u>Additional Cash</u>.  Notwithstanding anything in the Final DIP Order, the Stalking Horse APA or herein to the contrary, on the Closing Date and subject to the occurrence of the Closing:  (i) $1,000,000 of the Debtors' cash on hand (which, for the avoidance of doubt, shall be in addition to Excluded Cash and the Wind-Down Funds) shall remain with the Debtors' estates (the "<u>Additional Excluded Cash</u>"), and an additional $250,000 shall be paid by Forma Brands Holdings, LLC ("<u>Parent</u>") to the Debtors (the "<u>FB Payment</u>" and, together with the Additional Excluded Cash, the "<u>Additional Cash</u>"), which will be segregated by the Debtors and, subject to further order of the Court, may be utilized for distributions to general unsecured creditors; and (ii) the Prepetition Secured Parties and the DIP Secured Parties and, with respect to the Sponsor PIK Unsecured Notes (as defined in the First Day Declaration), FB Intermediate, shall waive any and all rights to recover on, or to otherwise

receive a distribution on account of, all claims against the Debtors from the Additional Cash.

c. <u>Purchase of Avoidance Actions</u>.  Notwithstanding anything in the Stalking Horse APA or herein to the contrary, on the Closing Date and subject to the occurrence of the Closing, (i) the Buyer shall acquire the Avoidance Action Assets, and (ii) the Buyer and any other Person claiming by, through or on behalf of the Buyer (including by operation of law, sale, assignment, conveyance or otherwise) shall be deemed to have waived and will not pursue, prosecute, litigate, institute or commence any Avoidance Actions or other Avoidance Action Assets.

d. (1) The Buyer, the Prepetition Secured Parties, the Controlling Collateral Agent, the DIP Agent, the DIP Secured Parties, (2) Forma Brands Holdings, LLC, FB Intermediate Holdings, LLC, General Atlantic (MH), L.P., MH Blocker 1 Corp., MH Blocker 2 Corp., MH Blocker 3 Corp., Morphe Management Holdings LLC, General Atlantic (MH) Loanco II, LLC, SP GE Elevate Blocker Corp., Elevate-Morphe Holdings, LLC, UNIMI, LLC, Chris Tawil and Linda Tawil (collectively, the "<u>FB Owners</u>"), (3) the respective former, present or future affiliates, related entities and/or investment funds, as applicable, of each Person listed in clause (1) and (2), and (4) the successors, assigns, members, partners, principals, employees, representatives, consultants, advisors, legal counsel, officers, directors, managers and direct or indirect equityholders of each Person listed in clauses (1) through (3), collectively constitute the "<u>Released Parties</u>" (the FB Owners and each person

listed in clauses (3) and (4) (as it relates to the FB Owners only) collectively constitute the "<u>FB Owner Released Parties</u>"); *provided*, *however*, that, for the avoidance of doubt, the Released Parties shall not include any of the Debtors.   On the Closing Date and subject to (x) the occurrence of the Closing and (y) as to Parent only, the payment of the FB Payment, consistent with the Buyer purchasing all right, title and interest of Sellers in and to all assets, properties, claims and rights of every kind and nature, whether real, person or mixed, tangible or intangible (including goodwill) wherever located and whether now existing or hereafter acquired (other than the Retained Assets) solely as set forth in the Stalking Horse APA, the Debtors, on behalf of themselves and their respective estates, past, present or future successors and assigns (the "<u>Releasing Parties</u>"), release and waive any and all actual or potential (direct or derivative) claims, causes of action, Avoidance Actions, Legal Proceedings or liabilities of whatever kind or nature, in law or equity, known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, suspected or unsuspected, now existing or hereafter arising, whether contractual, in tort or otherwise, and regardless of when or by whom asserted which the Releasing Parties had, have, or may have in the future against the Released Parties (the "<u>Released Claims</u>") including, but not limited to, those related to or arising out of (i) the Debtors' use, payment or transfer of the funds received pursuant to the Prepetition First Lien Credit Agreement at the closing of the Prepetition First Lien Credit Agreement on or around August 16, 2019 and (ii) the transactions

contemplated by the Acquisition Agreement (as defined in the Prepetition First Lien Credit Agreement); *provided*, *however*, that the Released Claims do not include any intercompany claims that (x) any Debtor has against another Debtor, (y) any Debtor has against any Acquired Entity or (z) an Acquired Entity has against any Debtor, each of which, for the avoidance of doubt, shall remain Purchased Assets or Assumed Liabilities to the extent set forth in the Stalking Horse APA.

e.    Pursuant to the Stalking Horse APA, the Buyer is purchasing all Released Claims held by the Releasing Parties against each of the FB Owner Released Parties, which Released Claims will be subject to the Mutual Release. [4] Effective as of (i) the Closing Date (and as a condition of Buyer to Closing) and (ii) as to Parent only, the payment to the Debtors of the FB Payment, the Released Parties shall enter into the Mutual Release, the terms of which Mutual Release will be documented in a manner acceptable to the parties.

32.    On the Closing Date, the Debtors shall deposit the Wind-Down Funds in the amount of $750,000 into the Wind-Down Escrow Account in accordance with the Stalking Horse APA; *provided*, that any unused portion of the Wind-Down Funds which is not utilized by Sellers to pay wind-down expenses shall be returned to Buyer.

33.    Prior to the Closing Date, the Debtors will draw cash under the DIP Facility to fund and satisfy amounts equal to the amounts set forth in the Approved Budget (as defined in the Final DIP Order) under the line item "Professional Fee Payments" through the end of the time

---

[4]    "Mutual Release" means that certain Mutual Release and Waiver, to be entered into by and among the Released Parties.

period covered by the Approved Budget, net of any approved and paid fees (including success, completion or transaction fees) and expenses and any retainers held by persons or firms retained by the debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code and the Committee pursuant to section 328 and 1103 of the Bankruptcy Code (the "Professional Fees and Expenses"). The Debtors shall deposit the cash in the amount of the Professional Fees and Expenses in a segregated account (the "Fee Reserve") to be held solely for the benefit of the Professional Persons (as defined in the Final DIP Order).  The Fee Reserve shall constitute Excluded Cash under the Stalking Horse APA.

34.    Prior to the Closing Date, the Debtors will draw cash under the DIP Facility to fund and satisfy amounts equal to the anticipated amounts of all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (the "Court and Trustee Fees") in the amount set forth in the budget for the Wind Down Funds.  The Court and Trustee Fees shall constitute Excluded Cash under the Stalking Horse APA.

35.    To the extent cash on hand or cash drawn under the DIP Facility remains following:  (a) payment of the Additional Excluded Cash; (b) payment of administrative and priority claims in accordance with the updated Approved Budget, including the Sources and Uses attached thereto as Exhibit A; and (c) distributing amounts owed as set forth in paragraphs 32, 33 and 34, any such remaining cash shall be returned to the Buyer.

36.    Good-Faith Purchaser.  The Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereby.

37.     <u>Section 363(n) of the Bankruptcy Code</u>.  The Sale Transaction approved by this Sale Order is not subject to avoidance or any recovery of damages pursuant to section 363(n) of the Bankruptcy Code.

38.     <u>No Avoidance</u>.  Neither the Sale Transaction nor the Stalking Horse APA is subject to avoidance, and no party is entitled to any damages or other recovery in connection therewith under section 363(n) of the Bankruptcy Code.

39.     <u>Bulk Sales</u>.  No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.

40.     <u>Amendments</u>.   The Stalking Horse APA and any related agreements may be amended, supplemented or otherwise modified by the parties thereto and in accordance with the terms thereof, without further action or order of the Court; *provided*, *that*, any such amendment, supplement or modification shall not have a material adverse effect on the Debtors' estates.

41.     <u>Binding Order</u>.  This Order and the Stalking Horse APA shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case of any of the Debtors if any of these Chapter 11 Cases is converted from a case under chapter 11 to a case under chapter 7, all creditors of any and all of the Debtors (whether known or unknown), all counterparties to any Contracts and all Recording Officers.  Neither the Sale Transaction nor the Stalking Horse APA shall be subject to rejection or avoidance under any circumstances.  This Order and the Stalking Horse APA shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer and its respective successors and assigns.

42.     <u>Allocation of Consideration</u>.  Except as provided in the Stalking Horse APA or this Order, all rights of the respective Debtors' estates with respect to the allocation of consideration received from the Buyer in connection with the Sale Transaction (including, without limitation, the value of the assumption of the Assumed Liabilities) are expressly reserved for later determination by the Court and, to the extent consideration is received by any Debtor that is determined to be allocable to another Debtor, the recipient Debtor shall be liable to such other Debtor for a claim with the status of an expense of administration in the case of the recipient Debtor under section 503(b) of the Bankruptcy Code.

43.     <u>Failure to Specify Provisions; Conflicts</u>.  The failure specifically to include or mention any particular provision of the Stalking Horse APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Buyer that the Stalking Horse APA be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

44.     <u>Further Assurances</u>.  From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, confirm, record or otherwise in the Buyer its right, title and interest in and to the Purchased Assets and the assigned Contracts.

45.    <u>Automatic Stay</u>.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Buyer to deliver any notice provided for in the Stalking Horse APA and to take any and all actions permitted or required under the Stalking Horse APA in accordance with the terms and conditions thereof.

46.    <u>No Stay of Order</u>.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 and any applicable Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.   The provisions of this Order shall be self-executing.   Time is of the essence in implementing the Stalking Horse APAs and closing the Sale Transaction.

47.    <u>Governing Terms</u>.  To the extent there is any inconsistency between the terms of this Order and the terms of the Stalking Horse APA, the terms of this Order shall govern.

48.    <u>Retention of Jurisdiction</u>.   This Court shall retain exclusive jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order and the Stalking Horse APA, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning or related to this Order, the Stalking Horse APA or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and thereof, and the status, nature and extent of the Purchased Assets and the Contracts; *provided that* notwithstanding anything to the contrary contained in this Order, nothing herein alters or impacts any party-in-interest's rights with respect to which judicial forum is the appropriate judicial forum for a lawsuit or proceeding arising under the Prepetition First Lien Credit Agreement, Secured Note Purchase Agreement, First Lien Intercreditor Agreement, or the Unsecured Note Purchase Agreement (each as defined in the First Day Declaration or the Stalking Horse APA, as applicable).

49.    <u>Cigna Policy</u>. Notwithstanding anything to the contrary in this Sale Order, or any Notice related thereto, the Cigna Policy (as defined in the *Objection of Cigna to Second Notice of Possible Assumption and Assignment With Respect to Executory Contracts and Unexpired Leases of the Debtors* [Docket No. 388] (the "<u>Cigna Objection</u>")) shall be assumed and assigned to the Buyer as of the Closing Date, and, in lieu of cure, all premiums and non-monetary obligations due under the Cigna Policy accruing prior to the Closing Date shall pass through to the Buyer and survive assumption and assignment, and nothing in this Sale Order or section 365 of the Bankruptcy Code shall affect such obligations. This fully resolves the Cigna Objection.

50.    <u>R&J Display Manufacturing</u>.  On March 8, 2023, R&J Display Manufacturing ("<u>R&J</u>") filed the *Limited Objection to the Debtors' Sale Motion by R&J Display Manufacturing* [Docket No. 374] and the *Declaration of Lance Landau in Support of Limited Objection to the Debtors' Sale Motion by R&J Display Manufacturing* [Docket No. 375] (together, the "<u>R&J Objection</u>").  R&J has agreed to voluntarily withdraw the R&J Objection, and therefore the R&J Objection is hereby deemed withdrawn.  R&J shall be deemed the holder of an allowed general unsecured claim against the Forma Beauty Brands, LLC bankruptcy estate in the amount of $68,455.48, provided that R&J timely files a proof of claim for such amount pursuant to any order fixing the deadline for the filing of a proof of claim in the Forma Beauty Brands, LLC bankruptcy case.

51.    <u>Texas Ad Valorem Taxes</u>.  Notwithstanding the foregoing, as adequate protection for the alleged claims and liens of Bexar County, Dallas County, Spring Branch Independent School District, Harris County Municipal Utility District #148 and Harris County (the "<u>Local Texas Tax Authorities</u>"), $98,874.59 shall be deposited by the Debtors in a segregated account (the "<u>Texas Tax Deposit</u>") at the Closing of the Transactions prior to the distribution of any such

proceeds to any other creditor.  Any valid liens of the Local Texas Tax Authorities shall attach to these proceeds to the same extent and with the same priority as such liens currently attach to the applicable property, including cash, of the Debtors.  The claims and liens of the Local Texas Tax Authorities shall remain subject to any objections any party (including the Debtors) would otherwise be entitled to raise as to the priority, validity, or extent of such liens.  The Texas Tax Deposit is not a cap on the amounts the Local Texas Tax Authorities may be entitled to receive and may only be distributed upon agreement between the Local Texas Tax Authorities and the Debtors, or upon order of the Court with notice to the Local Texas Tax Authorities; *provided*, that if after distributions, if any, are made in complete satisfaction of the claims of the Local Texas Tax Authorities, any excess cash remaining under the Texas Tax Deposit shall be returned to the Buyer.

52.    The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

Dated: March 23rd, 2023
Wilmington, Delaware

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE